UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
United States Department of Justice
950 Pennsylvania Aveue, NW
Washington, DC 20530

Plaintiff,

v.

CUMMINS INC.
500 Jackson St.
Box 3005
Columbus, IN 47202-3005

Defendant.

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## NATURE OF THIS ACTION

1.      This is a civil action brought pursuant to Sections 204 and 205 of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7523 and 7524, and the regulations promulgated pursuant to Section 202 of the Act, 42 U.S.C. § 7521, and codified at 40 C.F.R. Part 86 (Control of Emissions from New and In-Use Highway Vehicles and Engines). This action seeks injunctive relief and the assessment of civil penalties against Cummins Inc. ("Cummins") for violations of the Act and the regulations promulgated thereunder.

2.      Between 2013 and 2023, Cummins violated the Act through its production and sale of diesel motor vehicle engines – along with associated engine control and emission control systems – that were installed in nearly one million pickup trucks sold in the United States under the RAM 2500 and RAM 3500 model names (the "Subject Vehicles"). Cummins' applications for EPA Certificates of Conformity ("COC") for the Subject Vehicles did not disclose multiple software-based features that affect the Subject Vehicles' emission control system. Consequently, each Subject Vehicle differs from the specifications provided in Cummins' COC applications and none of the Subject Vehicles is certified by the COC that purportedly covered it. In addition, one or more of these undisclosed software features, alone or in combination with one or more of the others, bypass, defeat and/or render inoperative emission control systems in more than 630,000 Model Year 2013-2019 RAM 2500 and RAM 3500 trucks, causing those vehicles to emit substantially higher levels of nitrogen oxides ("NOx") during certain normal real world driving conditions, as compared to the vehicles' NOx emissions levels during federal emission tests.

3.      The Subject Vehicles have gross vehicle weight ratings within the range of 8,500 to 14,000 pounds, so they fall within the class of EPA-regulated vehicles commonly referred to as "light-heavy-duty" vehicles. The Subject Vehicles are governed by the EPA emission control regulations codified at 40 C.F.R. Parts 85 and 86, along with light duty vehicles. *See* 40 C.F.R. §§ 86.1801-12(a)(2), 86.1803-01.

4.      The Subject Vehicles are further described in Paragraph 41. The undisclosed software features that affect the Subject Vehicles' emission control system – referred to in this Complaint as Auxiliary Emission Control Devices ("AECDs") – are further described in Paragraphs 64-66.

## JURISDICTION AND VENUE

5.      The United States District Court for the District of Columbia has jurisdiction over the subject matter of and the parties to this action pursuant to Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

6.      Venue is proper in the District of Columbia pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, as well as 28 U.S.C. §§ 1391(b)(2) and (c)(2) and 1395(a), because the EPA Administrator's principal place of business is located in this judicial district and because violations alleged in the Complaint occurred in this judicial district.

## THE DEFENDANT

7.      Cummins is an Indiana corporation with its headquarters located in Columbus, Indiana.

8.      Cummins was a "manufacturer" of the Subject Vehicles within the meaning of the Act because Cummins was a "person engaged in the manufacturing or assembling of new motor vehicles . . . or who acts for and is under the control of any such person in connection with the distribution of new motor vehicles . . . ." 42 U.S.C. §§ 7550(1).

9.      At times relevant to this action, Cummins manufactured, sold, offered for sale, introduced into commerce, or delivered for introduction into commerce in the United States the new motor vehicles that are the subject of this Complaint, or caused one or more of the foregoing acts to occur.

## STATUTORY AND REGULATORY BACKGROUND

10.      This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521 *et seq*., and the regulations promulgated thereunder, which aim to protect human health and the

environment by reducing emissions of NOx and other pollutants from mobile sources of air pollution, including new motor vehicles.

11.     NOx pollution contributes to the formation of harmful smog and fine particulate matter in air, exposure to which is linked to a number of respiratory- and cardiovascular-related health effects as well as premature death. Children, older adults, people who are active outdoors (including outdoor workers), and people with heart or lung disease are particularly at risk for health effects related to smog or particulate matter exposure. Nitrogen dioxide formed by NOx emissions can aggravate respiratory diseases, particularly asthma, and may also contribute to asthma development in children.

12.     Section 202(a) of the Act, 42 U.S.C. § 7521(a), requires EPA to promulgate emission standards for new motor vehicles for NOx and other air pollutants.

13.     Section 216(2) of the Act defines "motor vehicle" as "any self- propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2).

14.     Except with respect to vehicles imported or offered for importation, Section 216(3) of the Act defines a "new motor vehicle" as a "motor vehicle the equitable or legal title to which has never been transferred to an ultimate purchaser . . . ." 42 U.S.C. § 7550(3).

**Vehicle Emissions Standards and Emissions Testing**

15.     Light-heavy-duty motor vehicles must satisfy emission standards for certain air pollutants, including emission standards for NOx. *See, e.g.,* 40 C.F.R. §§ 86.1811-04, 86.1811-09, 86.1811-10, and 86.1818-12.

16.     Manufacturers organize vehicles into "Test Groups" for purposes of demonstrating compliance with emissions standards. 40 C.F.R. § 86.1803-01.

4

17.     A Test Group is generally comprised of vehicles with similar engine design that are subject to the same emissions standards for pollutants regulated under the Act. *See* 40 C.F.R. §§ 86.1803-01, 86.1827-01(a).

18.     EPA uses a series of tests to measure tailpipe emissions, including NOx, from vehicles in a Test Group in order to demonstrate compliance with emissions standards.  These emissions tests include: (i) the Federal Test Procedure ("FTP"), also known as the "FTP-75," which EPA uses to evaluate emissions under urban driving conditions; (ii) the Highway Fuel Economy Test ("HWFET"), which EPA uses to evaluate emissions under highway driving conditions; (iii) the Supplemental Federal Test Procedure US06 ("SFTP US06"), which EPA uses to evaluate emissions under aggressive and high-speed driving conditions; and (iv) the Supplemental Federal Test Procedure SC03 ("SFTP SC03"), which EPA uses to evaluate emissions while a vehicle's air conditioning is in use. *See* 40 C.F.R. § 1066.801(c).

19.     Each emissions test has a set of fixed sequences, parameters, and driving cycles used to run the test. *See* 40 C.F.R. §§ 1066.801(d), 1066.810 to 1066.820, 1066.831, 1066.835, 1066.840. For example, the FTP is always run in three phases with the same:  driving times, driving speeds, acceleration intervals, deceleration intervals, engine soak times (*i.e.*, non-driving and non-sampling times before or in between phases), engine "key-off" intervals, and ambient air temperature range. 40 C.F.R. §§ 1066.801(d), 1066.815(d).

20.     Some or all of each emissions test is conducted using a chassis dynamometer. A chassis dynamometer uses a roller or rollers to simulate a road in a controlled environment, such as inside a building.

**<u>Certificates of Conformity and the Prohibition on Uncertified Motor Vehicles</u>**

21.    EPA administers a certification program to ensure that every new motor vehicle introduced into United States commerce satisfies applicable emission standards. 42 U.S.C. § 7521. Under this program, EPA issues COCs and thereby regulates the introduction of new motor vehicles into United States commerce.

22.    To obtain a COC, a manufacturer must submit an application to EPA for each Model Year and for each Test Group of new motor vehicles that it intends to enter into United States commerce. 40 C.F.R. § 86.1843-01.

23.    Each COC application must be in writing and signed by an authorized representative of the manufacturer and it must include a statement that the motor vehicles in the Test Group comply with all applicable regulations in 40 C.F.R. Chapter I. 40 C.F.R. § 86.1844-01(d).

24.    Manufacturers may submit COC applications electronically through EPA's Engines and Vehicles Compliance Information System, formerly the "Verify" system (collectively "EV-CIS"). EV-CIS is EPA's compliance information system for engines, motor vehicles, and equipment used in transportation and other mobile source applications. Manufacturers use EV-CIS to submit certification and compliance information for emissions and fuel economy. Before a manufacturer can submit a COC application through EV-CIS, the system requires the manufacturer to confirm that the Test Group that is the subject of the application complies with the applicable federal emissions regulations. Motor vehicles are covered by a COC only if the motor vehicles are as described in the manufacturer's application for the COC "in all material respects." 40 C.F.R. § 86.1848-10(c)(6).

25.     EPA issues COCs "upon such terms . . . as [the Administrator] may prescribe."
42 U.S.C. § 7525(a)(1); *see also* 40 C.F.R. § 86.1848-01(b) (authorizing EPA to issue COCs
upon such terms "deemed necessary or appropriate to assure that any new motor vehicle covered
by the certificate will meet the requirements of the Act and [40 C.F.R. Part 86]").

26.     Before a COC will be issued, manufacturers must submit to EPA the information
required by 40 C.F.R. § 86.1844-01(d). 40 C.F.R. § 86.1843-01(c).

27.     Each COC application must include, among other things, a list of all auxiliary
emission control devices ("AECDs") installed on the motor vehicles, as well as a justification for
each AECD, the parameters they sense and control, a detailed justification of each AECD that
results in a reduction in effectiveness of the emission control system, and a rationale for why it is
not a defeat device. 40 C.F.R. § 86.1844-01(d)(11).

28.     An AECD is "any element of design which senses temperature, vehicle speed,
engine [revolutions per minute], transmission gear, manifold vacuum, or any other parameter for
the purpose of activating, modulating, delaying, or deactivating the operation of any part of the
emission control system." 40 C.F.R. § 86.1803-01.

29.     An element of design is "any control system (i.e., computer software, electronic
control system, emission control system, computer logic), and/or control system calibrations,
and/or the results of systems interaction, and/or hardware items on a motor vehicle or motor
vehicle engine." 40 C.F.R. § 86.1803-01.

30.     A new motor vehicle containing an AECD that is not disclosed in the COC
application does not conform in all material respects with the COC application and, therefore, is
not covered by the COC.

**The Prohibition on Defeat Devices**

31.     A "defeat device" is an AECD that "reduces the effectiveness of the emission

control system under conditions which may reasonably be expected to be encountered in normal

vehicle operation and use, unless:  (1) Such conditions are substantially included in the Federal

emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle

against damage or accident; (3) The AECD does not go beyond the requirements of engine

starting; or (4) The AECD applies only for emergency vehicles . . . ."  40 C.F.R. § 86.1803-01.

32.     No new motor vehicles may be equipped with defeat devices. 40 C.F.R.

§ 86.1809-12.

**Relevant Statutory Provisions**

33.     Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), prohibits manufacturers of

new motor vehicles from selling, offering for sale, introducing into commerce, or delivering for

introduction into commerce, or any person from importing into the United States, any new motor

vehicle not covered by a COC issued by EPA under regulations prescribed under the Act

governing motor vehicle emission standards. *See* 40 C.F.R. § 86.1854-12(a)(1).

34.     Section 203(a)(3)(A) of the Act, 42 U.S.C. § 7522(a)(3)(A), makes it a violation

"for any person to remove or render inoperative any device or element of design installed on or

in a motor vehicle or motor vehicle engine in compliance with regulations under [Title II of the

Act] prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to

remove or render inoperative any such device or element of design after such sale and delivery to

the ultimate purchaser." *See* 40 C.F.R. § 86.1854-12(a)(3)(i).

35.     Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), makes it a violation

"for any person to manufacture or sell, or offer to sell, or install, any part or component intended

for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of

the part or component is to bypass,  defeat, or render inoperative any device or element of design

installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under

[Title II of the Act], and where the person knows or should know that such part or component is

being offered for sale or installed for such use or put to such use." *See also* 40 C.F.R. § 86.1854-

12(a)(3)(ii).

36.     Section 208(a) of the Act, 42 U.S.C. § 7542(a), requires that "[e]very

manufacturer of new motor vehicles . . . establish and maintain records, perform tests . . . make

reports, and provide information the Administrator may reasonably require to determine whether

the manufacturer or other person has acted or is acting in compliance" with Part A of Title II of

the Act.

37.     Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), prohibits any person from

failing or refusing to make reports or provide information to EPA pursuant to Section 208 of the

Act, 42 U.S.C. § 7542. *See also* 40 C.F.R. § 86.1854- 12(a)(2)(i).

38.     It is also a violation to cause any of the violative acts set forth in Section 203(a).

42 U.S.C. § 7522(a); 40 C.F.R. § 86.1854-12(a).

## GENERAL ALLEGATIONS

### Cummins' Role in Manufacturing and Seeking Certifications for the Subject Vehicles

39.     Cummins engaged in the business of producing and supplying diesel engines –

along with associated engine control and emission control systems – for the new motor vehicles

identified in Paragraph 41 as the Subject Vehicles. Cummins thereby qualified as a

"manufacturer" of the Subject Vehicles within the meaning of the Act. As a manufacturer of the

Subject Vehicles, Cummins submitted to EPA all Applications for Certification for the Subject Vehicles.

40.     Cummins sold, offered for sale, introduced into commerce, or delivered for introduction into commerce (or caused one or more of the foregoing acts for) the Subject Vehicles.

41.     The Subject Vehicles are Model Years 2013 through 2023 RAM 2500 and RAM 3500 pickup trucks equipped with 6.7 liter diesel engines manufactured by Cummins. For the purpose of seeking COCs, Cummins assigned the Subject Vehicles to the Test Groups listed in Exhibit 1 to this Complaint. Exhibit 1 divides the Subject Vehicles into two subcategories described as the "2013-2019 RAMs" and the "2019-2023 RAMs."

42.     Before their sale to ultimate purchasers, the Subject Vehicles were "new motor vehicles" as defined by Section 216(3) of the Act. 42 U.S.C. § 7550(3).

43.     In total, nearly one million Subject Vehicles have been sold in the United States.

44.     For each Subject Vehicle Test Group referenced in Paragraph 41 and Exhibit 1, Cummins submitted to EPA an application for a COC.

45.     As a part of the COC application process for the Subject Vehicles, Cummins submitted lists of AECDs through EPA's EV-CIS system for each Test Group.

46.     Cummins performed engine calibrations, including calibrations involving AECDs, for the Subject Vehicles.

47.     While Cummins was logged into EPA's EV-CIS system to submit COC application information for the Subject Vehicles, Cummins made entries in that system representing that the Subject Vehicles complied with the applicable emissions regulations, including those in 40 C.F.R. Part 86.

48.     Each application for a COC constitutes a "report [and/or] information the Administrator may reasonably require . . ." to assess compliance with the Act, within the meaning of Section 208(a) of the Act, 42 U.S.C. § 7542(a).

49.     Based on the information and representations that Cummins included in the COC applications for the Subject Vehicles, EPA issued COCs for the Subject Vehicles.

50.     Each of the COCs issued by EPA for the Subject Vehicles states on its face that the certificate covers only those new motor vehicles that conform, in all material respects, to the design specifications provided to EPA in the certificate application for such vehicle.

**Emission Control Systems in the Subject Vehicles**

51.     NOx emissions from diesel engines can be reduced using engine control systems and after-treatment systems. Diesel-fueled motor vehicles can use a combination of these systems in order to comply with emission standards.

52.     Engine control systems reduce NOx by employing strategies to reduce the amount of NOx that is formed in the vehicle engine during combustion. For example, recirculating a portion of the exhaust gas to the combustion chamber lowers both the peak combustion temperature of and the oxygen concentration in that chamber, thereby reducing the formation of NOx in the engine. This engine control system is known as "Exhaust Gas Recirculation" ("EGR").

53.     After-treatment systems remove NOx from the exhaust after combustion but prior to emission from the tailpipe of the motor vehicle.  One example of an after-treatment system is a Selective Catalytic Reduction ("SCR") system, which injects a urea solution into the exhaust stream in order to produce a chemical reaction to reduce NOx to nitrogen and water.  The urea solution is known as diesel exhaust fluid, or "DEF."

54. Each Subject Vehicle contains an EGR system and an SCR system.

**Electronic Control Modules in the Subject Vehicles**

55. Modern vehicle engines are equipped with electronic control modules ("ECMs") that control functions in the motor vehicles using software integrated in the ECM hardware. For each function (for example, the rate of fuel injected into the engine), the software includes algorithms that process inputs (for example, engine speed or ambient temperature) to the ECM and send messages to the components of the engine to perform certain actions depending on those inputs. The ECM software includes a large number of software variables that can be set by the manufacturer, and which define the thresholds or other values used in the software algorithms. Manufacturers calibrate these individual software variables to establish, among other things, the motor vehicle's emissions performance. The collection of all of the manufacturer-selected values is referred to as the calibration.

56. ECM software that senses inputs such as ambient temperature, engine speed, or duration of engine operation and then sends a message to control the operation of a component of the emission control system in the motor vehicle is an AECD within the meaning of 40 C.F.R. § 86.1803-01.

57. Cummins calibrated the ECM software for the Subject Vehicles.

**Undisclosed AECDs in the Subject Vehicles**

58. The COC applications for the Subject Vehicles describe elements of design that were installed in the Subject Vehicles to comply with federal emissions regulations, including engine control systems and after-treatment control systems.

59.     The COC applications for the Subject Vehicles describe, and each of the Subject Vehicles contains, an EGR system that was installed to reduce the formation of NOx in the motor vehicle engine.

60.     The COC applications for the Subject Vehicles describe, and each of the Subject Vehicles contains, an SCR after-treatment control system that was installed to reduce NOx prior to emission from the tailpipe of the Subject Vehicles.

61.     Each engine control system and after-treatment control system described in the COC applications and installed in the Subject Vehicles, and each component thereof, is a device or element of design that was installed in the Subject Vehicles to comply with the regulations promulgated under Title II of the Act.

62.     The ECM of each Subject Vehicle employs AECDs in the form of specific software functions and calibrations. These AECDs rely on inputs such as vehicle speed, coolant temperature, the duration of the engine's operation, and NOx concentration in the exhaust, for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system.

63.     During federal emission testing – including the test cycle generally known as the Federal Test Procedure and other test cycles used for emission testing required to obtain a COC (collectively, the "Federal Emission Tests") – the Subject Vehicles' ECM software functions and calibrations operate the EGR and SCR systems in a manner that produces emission results that are compliant with emission standards.

64.     During normal vehicle operation outside of the parameters of some of the Federal Emission Tests, certain AECDs included as part of the ECM software functions and calibrations for the 2013-2019 RAMs cause a reduction in the effectiveness of the emission

control system, including the after-treatment control system, resulting in increased NOx emissions. The magnitude of the emissions increase depends on, among other things, the vehicle model and the driving conditions. These AECDs were installed in more than 630,000 2013-2019 RAMs.

65.     The AECDs referenced in Paragraph 64 were not disclosed in the COC applications for the 2013-2019 RAMs.

66.     The 2013-2019 RAMs and the 2019-2023 RAMs also contained certain other AECDs that were not disclosed in the COC applications for those vehicles, although the United States is informed and believes that those other undisclosed AECDs did not cause a reduction in effectiveness of the emission control system and did not cause increased NOx emissions. These AECDs were installed in more than 330,000 2019-2023 RAMs.  The AECDs referenced in Paragraphs 64-66 are referred to collectively in this Complaint as the "Undisclosed AECDs."

67.     Each Undisclosed AECD is a design specification of the manufactured Subject Vehicles that differs in material respects from the description of the Subject Vehicles in their COC applications.

68.     Each Subject Vehicle contains one or more Undisclosed AECDs that were not disclosed in the application for the COC that purportedly covers each Subject Vehicle.

69.     The Subject Vehicles therefore are not covered by a COC.

**Defeat Devices in the 2013-2019 RAMs**

70.     When engaged individually, or in combination with the other Undisclosed AECDs, one or more of the Undisclosed AECDs installed in 2013-2019 RAMs have a principal effect of bypassing, defeating, or rendering inoperative engine control systems and/or after-treatment control systems installed in those vehicles.

14

71.     Cummins knew or should have known that the undisclosed AECDs installed in the 2013-2019 RAMs were parts of those vehicles that were being offered for sale or installed for such use or put to such use.

72.     When engaged individually, or in combination with the other undisclosed AECDs, one or more of the Undisclosed AECDs installed in 2013-2019 RAMs remove or render inoperative engine control systems and/or after-treatment control systems installed in the Subject Vehicles.

## FIRST CLAIM FOR RELIEF
**(Section 203(a)(1): Sale, Offer for Sale, Introduction or Delivery for Introduction into Commerce, or Import of New Motor Vehicles Not Covered by COCs, or Causing Any of the Foregoing Activities)**

73.     The United States realleges Paragraphs 1 through 72 above as if fully set forth herein.

74.     Cummins violated Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), when it sold, offered for sale, introduced into commerce, or delivered for introduction into commerce the nearly one million Subject Vehicles that were not covered by COCs (or caused any of the foregoing) because the Subject Vehicles do not conform in all material respects to the motor vehicle description in the applications for the COCs that purportedly cover them, in that the Subject Vehicles are equipped with Undisclosed AECDs.

75.     Each violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), by Cummins is a separate offense with respect to each new motor vehicle.

76.     Pursuant to Sections 204(a) and 205(a) of the Act, 42 U.S.C. §§ 7523(a) and 7524(a), and 40 C.F.R. § 19.4, Cummins is liable for injunctive relief and civil penalties of up to $37,500 per motor vehicle for each violation occurring between January 13, 2009, and November

2, 2015, and up to $57,617 per motor vehicle for each violation occurring after November 2, 2015

### SECOND CLAIM FOR RELIEF
**(Section 203(a)(3)(B): Manufacture, Sale, Offer for Sale, or Installation of any Parts or Components that Bypass, Defeat or Render Inoperative any Emission Controls, or Causing Any of the Foregoing Activities)**

77.     The United States realleges Paragraphs 1 through 72 above as if fully set forth herein.

78.     Cummins manufactured, sold, offered for sale, or installed parts or components (or caused any of the foregoing), intended for use with, or as part of, the 2013-2019 RAMs where a principal effect of the part or component is to bypass, defeat, or render inoperative a device or element of design installed on or in the 2013-2019 RAMs in compliance with regulations under Title II of the Act, and Cummins knew or should have known that such part or component was being offered for sale or installed for such use or put to such use. Such parts or components include one or more of the Undisclosed AECDs installed in the 2013-2019 RAMs, when engaged individually or in combination with the other Undisclosed AECDs.

79.     Cummins violated Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), by manufacturing, selling, offering for sale, or installing one or more of the Undisclosed AECDs in the 2013-2019 RAMs, or by causing any of the foregoing acts.

80.     Each part or component described in Paragraph 78 that was manufactured, sold, offered for sale, or installed on new motor vehicles (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B).

81.     Pursuant to Sections 204(a) and 205(a) of the Act, 42 U.S.C. §§ 7523(a) and 7524(a), and 40 C.F.R. § 19.4, Cummins is liable for injunctive relief and civil penalties of up to $3,750 per part or component described in Paragraph 78 per 2013-2019 RAM Subject Vehicle for

each violation occurring between January 12, 2009, and November 2, 2015, and up to $5,761 per

part or component described in Paragraph 78 per 2013-2019 RAM Subject Vehicle for each

violation occurring after November 2, 2015.

**THIRD CLAIM FOR RELIEF**
**(Section 203(a)(3)(A): Removing or Rendering Inoperative any Devices or Elements of**
**Design Installed to Comply with Emission Regulations, or Causing Any of the Foregoing**
**Activities)**

82.    The United States realleges Paragraphs 1 through 72 above as if fully set forth

herein.

83.    Certain Undisclosed AECDs installed in the 2013-2019 RAMs, individually or in

combination with the other Undisclosed AECDs, have the effect of removing or rendering

inoperative devices or elements of design installed on or in those Subject Vehicles in compliance

with the regulations promulgated under Title II of the Act.

84.    Cummins violated Section 203(a)(3)(A) of the Act, 42 U.S.C. § 7522(a)(3)(A),

by incorporating certain Undisclosed AECDs into the 2013-2019 RAMs, thereby removing or

rendering inoperative elements of the emission control system installed in those vehicles in

compliance with regulations promulgated under Title II of the Act, or by causing any of the

foregoing acts.

85.    Each 2013-2019 RAM equipped with one or more of the Undisclosed AECDs

referenced in Paragraph 83 represents a separate violation by Cummins of Section 203(a)(3)(A)

of the Act, 42 U.S.C. § 7522(a)(3)(A).

86.    Pursuant to Sections 204(a) and 205(a) of the Act, 42 U.S.C. §§ 7523(a) and

7524(a), and 40 C.F.R. § 19.4, Cummins is liable for injunctive relief and civil penalties of up to

$37,500 per motor vehicle for each violation occurring between January 12, 2009, and November

2, 2015, and up to \$57,617 per 2013-2019 RAM Subject Vehicle for each violation occurring after November 2, 2015.

## FOURTH CLAIM FOR RELIEF
### (Section 203(a)(2): Reporting Violations)

87.     The United States realleges Paragraphs 1 through 72 above as if fully set forth herein.

88.     Cummins failed or caused the failure to disclose the existence of the Undisclosed AECDs identified in Paragraphs 64-66 in the COC applications for the Subject Vehicles, information reasonably required by the Administrator to determine whether Cummins has acted or is acting in compliance with Part A of Title II of the Act.

89.     Cummins violated Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), by failing or causing the failure to disclose one or more of the Undisclosed AECDs in COC applications for Test Groups of new motor vehicles.

90.     Each failure to provide reports or information described above is a separate violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2).

91.     Pursuant to Sections 204(a) and 205(a) of the Act, 42 U.S.C. §§ 7523(a) and 7524(a), and 40 C.F.R. § 19.4, Cummins is liable for injunctive relief and civil penalties of up to \$37,500 per day of violation for such violations occurring between January 12, 2009, and November 2, 2015, and up to \$57,617 per day of violation for such violations occurring after November 2, 2015.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court provide the following relief:

a.     Permanently enjoin Cummins from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing in the United States (or causing any of the foregoing acts with respect to) any new motor vehicle not covered by a COC issued by EPA in accordance with the Act and the regulations promulgated thereunder.

b.     Permanently enjoin Cummins from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing in the United States (or causing any of the foregoing acts with respect to) any new motor vehicle equipped with an AECD, except in compliance with the Act and the regulations promulgated thereunder.

c.     Permanently enjoin Cummins from manufacturing, selling, offering to sell, or installing parts or components intended for use with a motor vehicle or motor vehicle engine (or causing any of the foregoing acts), where a principal effect of such part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle in compliance with regulations promulgated under Title II of the Act.

d.     Permanently enjoin Cummins from removing or rendering inoperative any device or element of design installed on or in a new motor vehicle in compliance with regulations promulgated under Title II of the Act.

e.     Order Cummins to take appropriate steps to remedy and prevent the violations of Section 203(a)(1) alleged above, including, but not limited to, mitigation of excess NOx emissions from the 2013-2019 RAM Subject Vehicles.

f.     Order Cummins to take appropriate steps to remedy and prevent the violations of Sections 203(a)(3)(A) and 203(a)(3)(B) alleged above, including, but not limited to, mitigation of excess NOx emissions from the 2013-2019 RAM Subject Vehicles.

g.     Enter a judgment that Cummins is liable to the United States for civil penalties for each violation of Section 203(a) of the Act and assess civil penalties against Cummins as follows:

     i.     for violations of Section 203(a)(1) of the Act: up to $37,500 per Subject Vehicle for each violation occurring between January 12, 2009, and November 2, 2015, and up to $57,617 per Subject Vehicle for each violation occurring after November 2, 2015;

     ii.     for violations of Section 203(a)(2) of the Act: up to $37,500 per day of violation for each violation occurring between January 12, 2009, and November 2, 2015, and up to $57,617 per day of violation for each violation occurring after November 2, 2015;

     iii.     for violations of Section 203(a)(3)(A) of the Act: up to $37,500 per Subject Vehicle for each violation occurring between January 12, 2009, and November 2, 2015, and up to $57,617 per Subject Vehicle for each violation occurring after November 2, 2015; and

     iv.     for violations of Section 203(a)(3)(B) of the Act: up to $3,750 per part or component for each violation occurring between January 12, 2009, and November 2, 2015, and up to $57,617 per part or component for each violation occurring after November 2, 2015.

i.     Award the United States its costs in this action; and

j.     Grant such other and further relief as the Court deems just and proper.

Signature Page for Complaint in *United States v. Cummins Inc.* (D.D.C.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated:  January 10, 2024

*s/ Randall M. Stone*
NICHOLAS A. McDANIEL
RANDALL M. STONE, D.C. Bar # 428003
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
(202) 514-0096 (McDaniel)
(202) 514-1308 (Stone)

**Exhibit 1 to Complaint in *United States v. Cummins Inc.* (D.D.C.)**

**Identification of Subject Vehicles and Subject Vehicle Sub-Categories**

| MY | Vehicle | Test Group | Other Defining Criteria | Sub-Category |
|---|---|---|---|---|
| 2013 | RAM 2500 & RAM 3500 | DCEXD06.78VV | | 2013-2019 RAMs |
| 2013 | RAM 3500 | DCEXD06.78WV | | 2013-2019 RAMs |
| 2014 | RAM 2500 & RAM 3500 | ECEXD06.78VV | | 2013-2019 RAMs |
| 2014 | RAM 3500 | ECEXD06.78WV | | 2013-2019 RAMs |
| 2015 | RAM 2500 & RAM 3500 | FCEXD06.78VV | | 2013-2019 RAMs |
| 2015 | RAM 3500 | FCEXD06.78WV | | 2013-2019 RAMs |
| 2016 | RAM 2500 & RAM 3500 | GCEXD06.78VV | | 2013-2019 RAMs |
| 2016 | RAM 3500 | GCEXD06.78WV | | 2013-2019 RAMs |
| 2017 | RAM 2500 & RAM 3500 | HCEXD06.78VV | | 2013-2019 RAMs |
| 2017 | RAM 3500 | HCEXD06.78WV | | 2013-2019 RAMs |
| 2018 | RAM 2500 & RAM 3500 | JCEXD06.78VV | | 2013-2019 RAMs |
| 2018 | RAM 3500 | JCEXD06.78WV | | 2013-2019 RAMs |
| 2019 | RAM 2500 | KCEXD06.78VV | Software Calibration 1 | 2013-2019 RAMs |
| 2019 | RAM 3500 | KCEXD06.78WV | Software Calibration 1 | 2013-2019 RAMs |
| 2019 | RAM 2500 | KCEXD06.78VV | Software Calibration 3 | 2019-2023 RAMs |
| 2019 | RAM 3500 | KCEXD06.78WV | Software Calibration 3 | 2019-2023 RAMs |
| 2020 | RAM 2500 | LCEXD06.78VV | | 2019-2023 RAMs |
| 2020 | RAM 3500 | LCEXD06.78WV | | 2019-2023 RAMs |
| 2021 | RAM 2500 | MCEXD06.78VV | | 2019-2023 RAMs |
| 2021 | RAM 3500 | MCEXD06.78WV | | 2019-2023 RAMs |
| 2022 | RAM 2500 | NCEXD06.78VV | | 2019-2023 RAMs |
| 2022 | RAM 3500 | NCEXD06.78WV | | 2019-2023 RAMs |
| 2023 | RAM 2500 | PCEXD06.78VV | Vehicles with engines sold before 12/21/2022 | 2019-2023 RAMs |
| 2023 | RAM 3500 | PCEXD06.78WV | Vehicles with engines sold before 12/21/2022 | 2019-2023 RAMs |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that copies of this Complaint were served by electronic mail on the following counsel for Defendant in accordance with the notice provisions of the proposed Consent Decree in this case:

NICOLE Y. LAMB-HALE
Vice President, Chief Legal Officer and Corporate Secretary
Cummins Inc.

JUSTIN A. SAVAGE
Sidley Austin LLP

Dated:  January 10, 2024                              <u>s/ *Randall M. Stone*</u>