**Attorneys General of Vermont, Maine, Maryland, Massachusetts, New York, Oregon, Rhode Island, and Washington**

February 16, 2024

Submitted via email: pubcomment-ees.enrd@usdoj.gov
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044–7611

Re:   Notice of Lodging of Proposed Consent Decree Under the Clean Air Act in *United States v. Cummins Inc.*, DJ Ref. No. 90– 5–2–1–12300, 89 Fed. Reg. 2983 (Jan. 17, 2024).

To the Department of Justice:

The undersigned Attorneys General submit these comments on the proposed Joint Consent Decree ("Consent Decree") lodged on January 10, 2024, with the United States District Court for the District of Columbia in the case captioned *United States v. Cummins Inc.*, Case No. 1:24–cv–00088. The Consent Decree was negotiated by and between the United States, on behalf of the U.S. Environmental Protection Agency ("EPA"), the State of California, on behalf of the California Air Resources Board ("CARB") and Cummins, Inc. ("Cummins"), to resolve EPA's and CARB's claims for, inter alia, Cummins' violations of federal and California vehicle emission standards related to model year 2013 to 2023 RAM diesel pickup trucks (the "Subject Vehicles").

I.   **Introduction and Summary**

Our states have a compelling interest in both Cummins' alleged violations and the Consent Decree because, pursuant to Section 177 of the Clean Air Act (42 U.S.C. § 7507), we have adopted the California motor vehicle emission standards applicable to the Subject Vehicles for the model years at issue.[1] Our states support EPA and CARB's efforts to investigate Cummins' alleged violations. We applaud the efforts to negotiate a settlement with Cummins for a landmark civil penalty amount and the critical corrective actions, such as recall and repair and special extended warranties for the Subject Vehicles.

However, the Consent Decree does not address the full spectrum of legal violations and impacts resulting from Cummins' actions. Despite the fundamental role that "Section 177 States" play in regulating pollution from motor vehicles, our states were not consulted or even notified of this matter until the U.S. Department Justice, EPA, and CARB announced that they had reached a settlement with Cummins in January 2024. Because the Section 177 States were not involved in the negotiations and are not parties to the Consent Decree, the Consent Decree does not resolve our legal

---

[1] *See States that have adopted California's vehicle regulations*, https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations

1

claims or mitigate the excess air pollution that was emitted from the Subject Vehicles which have been sold, registered, and operated in our states for a decade.

We submit these comments to explain and emphasize this point, and to respectfully request that the United States and California not ask the Court to approve the Consent Decree until the parties confer with our coalition of Section 177 States regarding an amendment to the Consent Decree to provide commensurate relief to the Section 177 States, based on the number of the Subject Vehicles sold, registered and operated in our states. Should the United States and California ask the Court to enter the Consent Decree without such amendment, we reiterate that the Consent Decree does not resolve our states' respective claims. In addition, we request that, going forward, DOJ, EPA, and CARB work proactively with the Section 177 States to ensure that we are apprised of alleged violations that impact our states and given the opportunity to participate in the related settlement discussions. It is in the interests of the United States, California, Section 177 States, and potential defendants to attempt to resolve all potential federal and state law violations in a single negotiated settlement that involves one or more Consent Decrees.

## II.    The Role of Section 177 States

Like CARB and EPA, our states have a strong interest in protecting human health and the environment by reducing emissions of nitrogen oxides ("NOx") and other pollutants from motor vehicles. Many of our states are not in attainment with federal air quality standards for ozone and other pollutants, and face state implementation plan deadlines to meet those standards. Nitrogen oxides are a precursor to the formation of harmful ozone pollution, which causes a variety of health impacts to humans, agricultural crops, and natural resources. Exposure to NOx directly injures human respiratory systems, impacting not only the public health and safety of our residents but also contributing to increased state health costs and expenditures. We exercised our authority under Section 177 of the Clean Air Act to adopt California's more-stringent motor vehicle emissions standards because those stricter standards are a significant component of our respective efforts to control the NOx and ozone pollution that particularly concerns and harms our states.

The Section 177 States represent a large share of the motor vehicle market, more than 28% of new light-duty vehicle registrations and nearly 17% of new heavy-duty vehicle registrations in the United States.[2] Our states have a long history of leadership and innovation in promoting cleaner vehicles. Given the nature of interstate travel by motor vehicles, effective regulation of their NOx emissions from motor vehicles depends on the cooperative efforts of not only California and EPA, but the Section 177 States as well.

## III.   The Consent Decree Does Not Resolve the Section 177 States' Claims

The Section 177 States face impacts from the increased NOx emissions distinct from those to non-177 states. Although the United States alleges in its Complaint that the Subject Vehicles emitted increased levels of NOx during normal vehicle operation and use, the Consent Decree does not include specific relief for our states—where those Subject Vehicles were sold, registered, operated, and subject to stricter emissions standards than EPA enforces under the federal scheme.

---

[2] *Section 177 States Regulation Dashboard,* https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations.

Without our participation, the Consent Decree does not resolve our states' legal claims against Cummins for the alleged violations, including our consumer protection laws. CARB's settlement covers only vehicles registered in California, so it also does not address the Subject Vehicles registered in our states. While EPA's settlement purports to be national in scope, EPA's standards are not applicable in our states. Just as EPA cannot and does not purport to be addressing or resolving California's claims, EPA lacks authority to address or resolve our claims. For those reasons, the Consent Decree makes clear that it resolves "only the civil claims of the United States," CD ¶ 109, and "only the civil claims of CARB," CD ¶ 110.

Our states' air pollution control statutes and regulations prescribe emission control requirements for new passenger cars, light-duty trucks, and medium-duty vehicles that mirror the California standards; mandate compliance with inspection and maintenance regimes; and prohibit tampering with vehicle emissions systems. These environmental laws, while differing from state to state, broadly authorize sanctions and penalties for the alleged violations, whether on a per vehicle basis or as broad injunctive and other remedial relief. Cummins' alleged illegal actions caused harm specific to our states and give rise to an array of claims under our laws and regulations that are not addressed and remedied by the Consent Decree.

## IV. The Consent Decree's Mitigation Program Does Not Mitigate the Excess Emissions in the Section 177 States

The Consent Decree requires Cummins to take various corrective actions to remedy the alleged violations, including paying $1.675 billion in civil penalties to be divided between the United States and CARB. Our understanding is that the California allocation of $164 million in civil penalties is based in part on the proportion of Subject Vehicles sold, registered, and operated in California (estimated to be approximately 100,000) and that the penalties will be deposited in a state-specific Air Pollution Control Fund for the purpose of enhancing CARB's mobile source emissions control program. California's separate partial consent decree requires Cummins to pay $175,187,250 to CARB "to be used" by CARB "to fund mitigation actions or projects that reduce NOx emissions in California, Cal. Partial CD ¶ 22, and an additional $33,000,000 to the California Attorney General "for claims for civil penalties and attorneys' fees," *id.* ¶ 24.

If the Section 177 States had been included in the negotiations at the outset, we would have insisted on the creation of a similar framework to benefit the emissions control programs of our states and also sought specific payments for mitigating the excess emissions in our states. The creation of a special fund, naming our states as beneficiaries and allowing us to receive an allocation based on the proportion of the Subject Vehicles sold and registered in each state, would, at least in part, enable our states to implement necessary state-specific mitigation projects. That approach would build on the success of the Volkswagen Environmental Mitigation Agreement and Trust Fund that enabled impacted states to implement targeted emission reduction projects to mitigate excess air pollution resulting from the unlawful conduct. We do not understand why that successful model was not used in this case, and, again, request that the United States and California pause this process and invite the Section 177 States to the table so that a holistic resolution can be achieved in this case as well.

Such state-specific mitigation programs are necessary because the proposed "U.S. Mitigation Program" does not actually address the excess NOx emissions in the Section 177 States, despite the Consent Decree's claim to "fully mitigate the total lifetime excess NOx emissions from 2013-2019 RAMs in the United States, excluding California." First, our states have adopted California's more stringent NOx emission standards, and thus mitigation to the level of EPA's standards will not completely offset the public health and environmental harms caused in our states. Second, the Consent Decree's regional program does not specifically direct any mitigation to the Section 177 States, requiring only "at least one" locomotive repowering project in each EPA Region, which does not guarantee that *any* mitigation will actually occur in our states. And, in all events, for the reasons discussed above, those mitigation projects will not offset the complete amount of excess NOx emissions in our states. While our states commend the inclusion of mitigation programs to reduce emissions from older, high-emitting diesel locomotives across the United States, which disproportionately impact communities overburdened by air pollution, the proposed mitigation projects will not fully redress the public health and environmental harms felt by our residents.

**V.     Conclusion**

Our states reiterate their appreciation for the efforts of DOJ, EPA, and California on this matter. Including the interests of the Section 177 States in this action from the outset could have strengthened the complaint and provided the opportunity for a more judicious and efficient resolution. It is not too late to do so. For that reason, we request that DOJ and California delay entering the Consent Decree to provide our states an opportunity to join the negotiations that could lead to a holistic resolution. Addressing our claims and providing relief now would also benefit Cummins, which otherwise faces the prospect of a follow-up investigation and enforcement action by our states, as has occurred with manufacturers in prior defeat device cases. In summary, the Consent Decree, in its current form, does not mitigate the impacts to our states or resolve our claims. We also encourage DOJ and California to take advantage of future opportunities to work proactively and cooperatively with the Section 177 States where potential related claims exist and can be efficiently addressed and remedied in a negotiated settlement.

Respectfully submitted,

| | |
|---|---|
| FOR THE STATE OF VERMONT<br><br>CHARITY R. CLARK<br>Attorney General<br><br>/s/ *Hannah Yindra*<br>HANNAH YINDRA<br>Assistant Attorney General<br>Office of the Attorney General<br>109 State Street<br>Montpelier, VT 05609<br>Tel: (802) 828-3186<br>Hannah.Yindra@vermont.gov<br><br><br>FOR THE STATE OF MAINE<br><br>AARON M. FREY<br>Attorney General of Maine<br><br>/s/ *Emma Akrawi*<br>EMMA AKRAWI<br>Assistant Attorney General<br>Natural Resources Division<br>6 State House Station<br>Augusta, ME 04333<br>(207) 626-8800<br>Emma.Akrawi@maine.gov<br><br><br>FOR THE STATE OF MARYLAND<br><br>ANTHONY G. BROWN<br>Attorney General of Maryland<br><br>/s/ *Roberta R. James*<br>ROBERTA R. JAMES<br>Assistant Attorney General<br>Office of the Attorney General<br>Maryland Department of the Environment<br>1800 Washington Blvd.<br>Baltimore, MD 21230<br>Telephone: (410) 537-3014<br>roberta.james@maryland.gov | FOR THE COMMONWEALTH OF MASSACHUSETTS<br><br>ANDREA JOY CAMPBELL<br>Attorney General<br><br>/s/ *Matthew Ireland*<br>SETH SCHOFIELD<br>Senior Appellate Counsel<br>Energy and Environment Bureau<br>MATTHEW IRELAND<br>Assistant Attorney General<br>Environmental Protection Division<br>Office of the Attorney General<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108<br>Tel: (617) 727-2200<br>Email: matthew.ireland@mass.gov<br><br><br>FOR THE STATE OF NEW YORK<br><br>LETITIA JAMES<br>Attorney General<br><br>/s/ *Gavin G. McCabe*<br>Gavin G. McCabe<br>Ashley M. Gregor<br>Channing Wistar-Jones<br>Assistant Attorneys General<br>Michael J. Myers<br>Senior Counsel<br>New York State Office of Attorney General<br>28 Liberty Street, 19th Floor<br>New York, NY 10005<br>Tel. (212) 416-8469<br>gavin.mccabe@ag.ny.gov | |

5

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
Attorney General

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge
STEVE NOVICK
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.state.or.us
Steve.Novick@doj.state.or.us

FOR THE STATE OF WASHINGTON

ROBERT W. FERGUSON
Attorney General

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
Attorney General of Rhode Island

By: */s/ Alison Hoffman Carney*
ALISON HOFFMAN CARNEY
Assistant Attorney General
Chief, Environment and Energy Unit
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400 ext 2116
Email: acarney@riag.ri.gov